CLARKE (JOHNSTON v.). See Case No. 18,303.

C L A R K E v. SECRETARY OF THE TREASURY. See Case No. 18,279.

CORCORAN (JUDSON v.). See Case No. 18,304.

## Case No. 18,281.
### CORPORATION OF GEORGETOWN v. UNITED STATES.

[2 Hayw. & H. 302.] [1]

Circuit Court, District of Columbia. Aug. 25, 1858.

MUNICIPAL CORPORATIONS—REPAIRING ROADS OUTSIDE OF CORPORATE LIMITS—INDICTMENT FOR NEGLECT.

1. A municipal corporation has no authority to take upon itself the burden of repairing a road or turnpike, in which the public as well as the corporation are interested, when the same is outside the limits of said corporation.

2. Where it is the duty of the levy court to keep in repair all the roads in the county, outside the corporate limits of Georgetown, an ordinance passed by the corporation, stipulating that the corporation should repair a certain road leading to said corporation, does not make the corporation liable on an indictment for not repairing said road, neither would it be the case where the act of congress of 1826 [4 Stat. 183] makes the corporation liable for one-half of the expense of keeping the county roads in repair. In other words the corporation has no authority for any purpose beyond its own limits.

At law. Writ of error from the criminal court. On an indictment for a nuisance in not repairing a highway, etc.

P. Barton Key, U. S. Atty. for the District of Columbia, for the United States.
J. M. Carlisle, special counsel with U. S. Dist. Atty.
Robert Ould, for the corporation.

---

[1] [Reported by John A. Hayward, Esq., and Geo. C. Hazleton, Esq.]

The object of this prosecution being to ascertain judicially whether the corporation of Georgetown is bound to keep in repair the road mentioned in the indictment, and there being no dispute about the matter of fact, but only in matter of law, touching the obligation to repair and liability to this indictment, the case is submitted to the court under the statute, subject to the opinion of the court as to the liability of the corporation, upon the following facts agreed:

On the 2nd of March, 1833, congress passed and approved an act to improve the navigation, &c. 4 Stat. 646. The corporation passed the following ordinances of March 11, 1833; of 19 and 20 March, 1833; of May 11, 1833; of 19 June, 1833, and of September 16, 1833. It is agreed that a majority of the voters of Georgetown did, at the election referred to in the ordinance of Sept. 16, 1833, duly declare their preference for making such "free turnpike road from some point of the upper part of the town," &c., but no application was made to congress in that behalf. And afterwards the said corporation passed the following ordinances, to wit: the ordinances approved March 15, 1834, June 7, 1834, October 21, 1834, February 21, 1835, April 16 and 18, 1835, May 16 and 23, 1835, and also the following ordinances, to wit: the ordinances approved November 9, 1835, December 22, 1835, April 23, 1836, June 15, 1836, and October 1, 1836, and afterwards passed the following ordinances, to wit: the ordinances approved December 4, 1838, November 22, 1839, February 12, 1840, and July 18, 1840. And it is agreed that the road mentioned in the indictment was contracted by the corporation under the contract approved by said ordinance of April 16, 1835; and that the said road is the same road which is referred to in the said ordinances as the "Upper Route" of the free turnpike road aforesaid, and which enters the said town at Seventh street.

It is agreed that the road mentioned in the indictment, and as aforesaid constructed by the corporation, has and is from the time of constructing the same, and hitherto a public highway, convenient for the interests of the upper or northern section of the town, and lies without the corporate limits of the said town, and wholly within the county of Washington, District of Columbia, extending from Seventh street in said town; and has been, from time to time, repaired and kept in repair by the corporation from the time the same was contracted until within two years last past, since when the corporation has not kept the same in repair or in a condition fit for a public highway; but the same has been and is wholly unfit for travel, and by reason of the decay and dilapidation of certain culverts, part thereof, and by reason of the condition of the roads generally, the same is a public nuisance, as being impassable as a public highway, and as causing damage by overflow, &c., to the private property bordering thereon. It is agreed that if upon the whole case the court shall

be of opinion that the corporation is bound to keep the said road in repair, and is indictable for the nuisance created by the failure to do so, judgment shall be entered accordingly, or such form (either upon plea of guilty or otherwise) as may be deemed regular by the court; but if the court shall be of the contrary opinion a nolle prosequi shall be entered. the object of the prosecution being to determine judicially the right of the matter.

OPINION OF THE COURT. The present case grows out of an indictment in the criminal court against the corporation of Georgetown for not keeping in repair a road in the county of Washington, outside the limits of the corporation, which is described in the indictment as "a certain common public highway leading from Seventh street, in the town of Georgetown, at the county aforesaid, to the stone house situate on the common and public highway leading to the Little Falls bridge. and known and designated as the 'Upper Road to the Little Falls Bridge.' "

It is admitted on all hands that the duty of repairing a highway outside its territorial limits does not rest, at common law. upon any parish, corporation or county; and that to create a liability to repair an exterritorial highway some special legal obligation must be shown. If, therefore, the corporation of Georgetown is liable under this indictment that liability must be sought in some legislation of congress or on some permanent obligation assumed by the corporation within the scope of the corporate powers which have been confirmed by law upon the authorities of the town. With the most limited powers, among the chief of which was the right of the commissioners to hold semi-annual fairs in April and October. Georgetown within what were then the limits of Frederick county, was erected into a town by the act of assembly of 1751. c. 25. Its streets, lanes and alleys were defined by the commissioners and by successive acts of assembly of 1783, c. 27, and 1784, c. 45, the boundaries of the town were extended. The town was first incorporated by Act 1789, c. 23, then being in Montgomery county, and certain additional powers were granted to it by Act 1797, c. 56, and 1799, c. 85. Congress extended the chartered powers by the act of 1805, c. 32 [2 Stat. 332], and by the 12th section conferred upon the corporation power to "open. extend and regulate streets within the limits of said town," and by further amendment of the charter, Act 1809, c. 30, § 4 [2 Stat. 537]. that power is defined as follows: "The said corporation shall have power to lay out, open, extend and regulate streets, lanes and alleys within the limits of the town under the following regulations," &c., &c. And connected with these special powers our streets, &c., &c.. within the limits of the town; congress conferred upon the levy court of Washington county, by the act of 1812, c. 117, § 2 [2 Stat. 771], "full powers to lay out, straighten and repair public roads within said county, ex-

cept within the corporate limits of the cities of Washington and Georgetown." By the 8th section of this law the levy court was empowered to lay an annual tax upon all the real and personal property within said county, (except the city of Washington,) for the purpose of defraying the annual charges, (expenses of repairing roads included.) Afterwards by Act 1826, c. 111 [4 Stat. 183], the power of the levy court to assess and collect taxes within Georgetown was abolished, but with regard to county expenses the corporation was bound to contribute certain proportion amongst others, one-half the expense of opening and repairing roads in the county of Washington, west of Rock Creek and leading to Georgetown. From an inspection of these several statutes, it is manifest that the corporation of Georgetown has no general powers whatever on the subject of roads outside of the limits of the town to which all its functions and authority are by the statutes studiously limited, and that the whole power to open roads as well as the duty to repair is devolved by express terms upon the county, the corporation paying only to the treasury of the county, one-half the expenses incurred by the levy court for roads opened or repaired west of Rock creek.

This being the relation of the corporation to the county in regards to its road system, the special act of congress, of March 2, 1833, c. 66, and the several ordinances of the corporation mentioned in the agreed statement which taken together are supposed to create the liability to repair in the case were enacted. In order to understand their full bearing it is deemed necessary to refer to some other special legislation of Maryland, by Act 1791, c. 81, incorporated the Georgetown Bridge Company, for the purpose of erecting a toll bridge at the Little Falls of the Potomac and subsequently by Act 1795, c. 44, on petition of that company authorizing them to construct a road from the bridge to Georgetown, which said road was declared to be "a public highway forever, and kept in repair by said company." Afterwards upon the destruction of the bridge, Feb. 22nd, 1811, congress authorized the company to make a new assessment upon its stockholders to rebuild the bridge and to keep the same in repair together with the road leading thereto from Georgetown. The bridge and road then were constructed by the same company, owned by the same company, chargeable upon and to be kept in repair by the same company and made subservient to the uses of the public, to citizens of Georgetown and others going to and returning from that town. It was under this state of circumstances that congress, in pursuance of its general policy to make the roads and bridges leading to and through the District of Columbia, free to all, passed the act of 1833, c. 66, appropriating a sum of money to enable the corporation of Georgetown among other things "to make a free turnpike road to the District line on the Virginia side of the river, and to purchase of the present

proprietors and make forever free the bridge over the Little Falls of the Potomac river," coupling with its bounty the condition "that before the said sum be paid over to said corporation it shall pass an ordinance to make said road and bridge free, and to be kept in repair by said corporation forever." In consequence of the act of congress, the corporation passed an ordinance on the 11th of March, 1833, accepting the condition imposed, and on the 20th of March, another ordinance in more explicit terms than the first, declaring "that the bridge across the Potomac river at the Little Falls and the road to the District line west of the river, be and the same are hereby declared to be free, and the corporation of Georgetown engages that the said bridge and road shall be kept in repair by the corporation forever."

Looking to the preceding legislation of Maryland and congress, it would seem that the ordinances fulfilled the meaning of the law, and determined upon the then existing road and bridge as the road they were to turnpike and make free as far as the Virginia line, and in connection with the bridge keep in perpetual repair; and that having accepted that particular road the power of the corporation conferred by the act of congress was to that extent satisfied and exhausted. It is true, indeed, that by an intermediate ordinance of the 19th of March, 1833, the corporation seemed to contemplate an unrestricted power in itself to select any route for a turnpike road without any reference to the site of the old road of the bridge company, and by other ordinances of May and June of that year they look to an alternative selection.

Afterwards, in September of the same year, 1833, they passed an ordinance, the title of which is: "An ordinance fixing and establishing the route of the free turnpike road from the town to the Chain bridge, and making provision for the construction thereof, and for other purposes," and by that ordinance they adopted substantially the same road mentioned in the ordinances of the 11th and 20th of March, to wit: the old road of the bridge company, with certain alterations which were particularly specified in the first section of the ordinance.

It is perhaps not necessary to examine overcritically, how far it was competent for them to modify the selection of a route previously designated and which in this ordinance is substantially re-announced, for if the corporation had no power whatever over the subject, so as to make needful, perhaps indispensable, variations in the course of the route so as to make it fit for turnpiking, there could be no shadow for the operation of the further power over the matter necessary to impose the obligation which must exist to sustain the present indictment.

Conceding then, for the purpose of this case, the power to vary the location of the line where the reasonable convenience or economy of constructing the turnpike required the mod-

ification, it remains that the ordinance of September the 16th, in connection with those of March 11th and 20th, amounted to a final adoption of a route for a turnpike, coupled with an obligation under the sanction of the act of congress for perpetual repair of the road designated in the ordinance as "the present road or canal route." It also made provision for constructing the road and appropriating a portion of the funds derived from congress to carry out that object.

Having done thus much the corporate authorities went further. In the same ordinance of the 16th September, 1833, by the 7th section, they proposed to apply to congress for authority to appropriate $35,000 of the monies derived under the act of March preceding, either to the purchase of the turnpike from Georgetown to Rockville or making a free turnpike road from some point of the upper part of the town to intersect the road designated in the ordinance, as a majority of the voters might prefer, their preference to be ascertained at the next March election. The voters did declare a preference for the road described in the indictment.

No act of congress was, however, passed, and the corporation in October, 1834, passed an ordinance entitled, "A supplement to the ordinance of September 16th," providing for an additional inlet into the town and for the construction thereof; in which they declared "that the upper section of the town are fairly entitled to an equal participation in the advantages resulting from the expenditure of funds for the benefit of all its citizens, which could only be extended to those sections by means of a part of said road leading into said sections, and as the public convenience required it," they therefore authorized certain commissioners to lay out and construct the same, and declared that when located it should be forever taken as part of the free turnpike road provided for in the act of 2nd of March, 1833. This road, being the same described in the indictment, was located and the contract for its construction ratified contemporaneously with the contract for the road provided in ordinance of 16th September, 1833, and by the ordinance of October certain portions of the funds derived from congress were appropriated to this upper route, and by an ordinance of April 23, 1836, a fund of $15,000 was set apart and pledged as a perpetual fund for the repair of both roads. The two roads have thenceforth continually been kept in repair by the corporation of Georgetown until some short period before the filing of this indictment.

In constructing this new road, nearly or quite one-half the length of the original road, did the authorities of Georgetown bring themselves within the powers conferred by the act of congress, by connecting it with the original road, and at the same time declaring it to be a part thereof? Could a form of words adopted in a corporation ordinance make that a part of a road, which was to all intents a separate road, connecting with it?

It was not essential to the other which was capable of use without it, and although doubtless of great value and utility to a portion of the citizens of the town it could not in legal comprehension be a part of that which was an entirety without its being constructed, and had substantial existence many years before it was located; neither could the appropriation to the purpose of a portion of the funds derived from the bounty of congress by the individuals who happened at the time to fill the corporate offices, raise a perpetual obligation upon the corporation to redeem a pledge with which its officers had accompanied an expenditure of those funds. For the protection of the rights and property of the inhabitants who constitute the citizens of any municipality the law has wisely provided that they shall be bound by no act of their agents which is not within the scope of the delegated powers of those agents, and however the pledge of public faith may be attempted, it will not avail unless warranted by a legal delegation of authority. The public convenience and manifest advantage to a portion of the citizens of Georgetown which the ordinances recite as these inducements are alike insufficient to support a legal obligation upon the corporation to repair this road.

In one of the cases referred to in the argument of this case: Rex v. Inhabitants of St. Giles, 5 Maule & S. 266, 267; Holroyd, Justice, gives the very reason which fits the present enquiry, "It has been said that it might have been for the convenience of the parish of St. Mary, that this land was dedicated to the public for the purpose of a highway, and that in consideration of this boon the parish might have taken on themselves the burden of its reparation, but I think upon reflection that this could not be a legal consideration binding on the successors, because a burden might thereby be imposed on them beyond the benefit which they were to receive, for they would have to repair the highway not only for their own use, but also for the public." And as in this case, although the convenience of the people of Georgetown may be promoted by the road in question; and in view of that and to equalize the advantages springing out of the liberality of congress, the then inducements of the corporate officers honestly stipulated that through all time the corporation should repair the road; in so doing they transcended their authority and attempted to impose a burden beyond the benefit which the law contemplated that the citizens received in stipulating for them to repair a highway in which the whole public as well as the citizens of Georgetown are interested. If the road in question be a public highway, as is assumed in the indictment and the agreed statement, then the corporation not being liable under the above mentioned ordinances, the burden of repair will fall upon the county. In that

event Georgetown is not entirely exempted but according to the equitable apportionment determined by the act of 1826, one-half of the expense must be contributed by the corporation to the levy court, which body by the policy of the law is primarily charged with the duty of repairing public roads within the county of Washington.

If this view of law be correct, it is needless to inquire whether, as was strenuously denied by the counsel for the corporation, an obligation to repair a highway may be incurred by contract for a pecuniary consideration, which will render the party so contracting liable to indictment for not repairing. No such contract could be made by the corporation of Georgetown under the powers conferred by its present charter. Neither is it necessary to consider any question growing out of the form of the indictment. For the reason above given, it is the opinion of the court that the indictment cannot be sustained upon the case agreed, and the judgment of the criminal court must therefore be traversed and judgment of not guilty entered for the traverser.